UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JAMES PAUL RYAN, individually and as Next Friend of DEBORAH J. RYAN, | ) ) ) ) | |
| Plaintiff, | ) ) ) | Civil Action No. 25-11594-BEM |
| v. | ) ) | |
| JUNE M. QUINLAN and KAREN M. QUINLAN-JASKOT, | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION TO DISMISS**

**MURPHY, J.**

Plaintiff James Paul Ryan ("Mr. Ryan" or "Plaintiff") individually, and as "Next Friend" of Deborah J. Ryan ("Ms. Ryan") alleges that Defendants June M. Quinlan ("Ms. Quinlan") and Karen M. Quinlan-Jaskot ("Ms. Quinlan-Jaskot," and with Ms. Quinlan, "Defendants") tricked Ms. Ryan into giving Ms. Quinlan certain jewelry (the "Jewelry") by claiming to borrow it. Plaintiffs further allege that Ms. Quinlan stated to two individuals at rehabilitation facilities that Mr. Ryan had threatened to kill Ms. Ryan. These allegations form the basis of Plaintiff's claims seeking the return of the Jewelry and monetary damages. Before the Court now is Defendants' motion to dismiss. For the reasons stated below, the Court GRANTS in part and DENIES in part the motion.

**I.    Standing**

For the reasons stated on the record during the September 11, 2025 hearing, the Court granted Mr. Ryan's motion to proceed as Next Friend. As such, he has standing to assert claims

on behalf of Ms. Ryan. "[I]f at least one plaintiff has standing, the suit may proceed." *Capen v. Campbell*, 134 F.4th 660, 668 (1st Cir. 2025) (quoting *Biden v. Nebraska*, 600 U.S. 477, 489 (2023)). Because the Court concludes Mr. Ryan has standing as Next Friend on Counts I, II, III, and VII, and Defendants do not dispute that Mr. Ryan has standing on Counts IV, V, and VI, the Court need not consider the remaining standing arguments.

## II. Subject Matter Jurisdiction

Defendants next argue that Plaintiff cannot meet the jurisdictional minimum.[1] Dkt. 23 at 9–10. While the burden falls on Plaintiff to establish that the minimum amount in controversy has been met, the "sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Abdel-Aleem v. OPK Biotech LLC*, 665 F.3d 38, 41 (1st Cir. 2012) (quoting *Stewart v. Tupperware Corp.*, 356 F.3d 335, 337–38 (1st Cir. 2004)). "It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Id.* (quoting *Stewart*, 356 F.3d at 338). Here, the Court credits Plaintiff's reasonable attempts to estimate the value of the Jewelry, which is not in his possession, limiting his ability to provide a greater level of specificity.[2] Plaintiff has sufficiently demonstrated that it is not a legal certainty that the Jewelry is worth less than the jurisdictional minimum.

## III. Statute of Limitations

Under Mass. Gen. Laws ch. 260, § 2A, "actions of tort . . . shall be commenced only within three years next after the cause of action accrues." However, "under [the] discovery rule, the

---

[1] Plaintiff asserts jurisdiction under a diversity theory, which, *inter alia*, requires that the amount in controversy be greater than $75,000. 18 U.S.C. § 1332(a)(1).

[2] That the Jewelry was purchased for $10,000 in 1958 further supports Mr. Ryan's estimates, given inflation and the increased value of gold alone today as compared to 1958 (excluding the value of any gemstones in the Jewelry). *See, e.g.*, Edward Chancellor, *Gold's Golden Moment Dazzles Better-Value Rivals*, REUTERS (May 5, 2025) https://www.reuters.com/breakingviews/golds-golden-moment-dazzles-better-value-rivals-2025-05-02/ (discussing how, even adjusting for inflation, "the price of gold is at a record high").

statute of limitations starts when the plaintiff [1] discovers, or [2] reasonably should have discovered, that [she] has been harmed or may have been harmed by the defendant's conduct." *Passatempo v. McMenimen*, 461 Mass. 279, 293 (2012) (second and third alterations in original) (internal quotation marks omitted) (quoting *Koe v. Mercer*, 450 Mass. 97, 101 (2007)). "Generally, what the plaintiff knew or should have known is a question of fact to be resolved by a jury." *Davalos v. Baywaych Inc.*, 752 F. Supp. 3d 416, 421 (D. Mass. 2024) (quoting *Davalos v. Bay Watch, Inc.*, 494 Mass. 548, 556 (2024) (collecting cases)), *reconsideration denied sub nom. Davalos v. Baywatch, Inc.*, 2025 WL 1135570 (D. Mass. Apr. 17, 2025). "Accordingly, at this early stage of litigation, it is premature to determine whether the discovery rule applies or plaintiff's claim is time-barred." *Maffeo v. White Pine Invs.*, 537 F. Supp. 3d 45, 48 (D. Mass. 2021).

### IV. Failure to State a Claim

Courts analyzing claims under Federal Rule 12(b)(6) must determine whether a plaintiff's factual allegations, disregarding all "conclusory" statements, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The inquiry is usually limited to the facts alleged in the complaint, incorporated into the complaint, or susceptible to judicial notice." *Whelden v. U.S. Bank Nat'l Ass'n*, 494 F. Supp. 3d 68, 73 (D. Mass. 2020) (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)).

#### A. Claims Based on the Jewelry Theft

Plaintiff has adequately pled the core claims for conversion (Count I), fraud (Count II), and unjust enrichment (Count III) against Ms. Quinlan. While Defendants argue that these claims must fail because Ms. Ryan has not sought the return of the Jewelry, Dkt. 23 at 13–14, this argument is unavailing. First, Plaintiff's amended complaint alleges that Defendants' possession of the Jewelry was not under a good-faith claim of right, thereby negating the requirement to demand its

3

return.  Dkt. 18 ¶¶ 33–34, 81–82; *see, e.g.*, *Walgreen Co. v. Haseotes*, 2025 WL 991312, at *15 (D. Mass. Mar. 31, 2025) (noting that demand for property's return was only an element "if the defendant legitimately acquired possession of the property under a good-faith claim of right" (quoting *United States v. Peabody Const. Co., Inc.*, 392 F. Supp. 2d 36, 37 (D. Mass. 2005))). Second, given that Ms. Ryan's alleged incompetency began as early as October 2021, per the amended complaint, for the purposes of this motion, the Court must treat Mr. Ryan's demands for the return as satisfying the demand requirement on Ms. Ryan's behalf.  *See Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 71–72 (1st Cir. 2014) (explaining that the court must accept as true the well-pleaded allegations and draw all reasonable inferences therefrom in the plaintiff's favor). Plaintiff has alleged that Ms. Quinlan convinced Ms. Ryan to lend her the Jewelry—despite Ms. Ryan's inability to consent to this—and then refused to return the Jewelry.  Dkt. 18 ¶¶ 30–45, 56–57, 64–66, 69–72, 81, 94–99, 109–111.  Against this backdrop, the Court finds the pleadings sufficient at this stage.[3]

### B. Defamation and IIED

Plaintiff's claims for defamation (Count IV) and intentional infliction of emotional distress ("IIED") (Count V) against Ms. Quinlan also survive.  Plaintiff has alleged that Ms. Quinlan told staff at two different nursing homes that Mr. Ryan "had threatened" Ms. Ryan's life.  Dkt. 18 ¶¶ 48, 52, 116–21.  A false accusation that a person committed a prior criminal act—in this case, that Mr. Ryan had threatened to kill his wife—constitutes defamation *per se*, which does not require demonstrating special damages.  *See Kaiser v. Kirchick*, 662 F. Supp. 3d 76, 101–02 (D. Mass. 2023).  While Plaintiff also asserts, in a footnote in his amended complaint, that he was

---

[3] As discussed below, these allegations only apply to Ms. Quinlan, and the Court will dismiss the claims against Ms. Quinlan-Jaskot.  *See infra* Section II(C).

informed by Ms. Quinlan that she allegedly heard Ms. Ryan say that "[Mr. Ryan's] going to kill me,"[4] Dkt. 18 ¶ 116 n.4, that does not amount to an admission that Ms. Quinlan made her prior statements in good faith, such to defeat the defamation claim.

With regards to the IIED claim, Defendants argue that Plaintiff's allegations do not rise to the "extreme and outrageous" level required or show that the conduct caused severe emotional distress. Dkt. 23 at 17–18; *see also Taylor v. Swartwout*, 445 F. Supp. 2d 98, 105 (D. Mass. 2006) (describing elements of an IIED claim). Plaintiff alleges that "Defendants barred [Mr. Ryan] from visiting his incapacitated wife by falsely portraying him as violent." Dkt. 25 at 19; *see also* Dkt. 18 ¶¶ 124–131. "[A] defendant's extreme and outrageous conduct 'may be found in the totality of the circumstances.'" *Taylor*, 445 F. Supp. 2d at 105 (quoting *Gouin v. Gouin*, 249 F. Supp. 2d 62, 73 (D. Mass. 2003)). On these alleged facts, the Court finds it plausible that Ms. Quinlan's allegedly defamatory statements and efforts to separate Mr. Ryan from his wife of forty years "go[] beyond all possible bounds of decency, and [are] regarded as atrocious, and utterly intolerable in a civilized community." *See Polay v. McMahon*, 468 Mass. 379, 385 (2014).[5]

### C.  Civil Conspiracy and Tortious Interference

The Court does agree, however, that Plaintiff has failed to state a claim for civil conspiracy (Count VI) and tortious interference (Count VII). Plaintiff alleges that Defendants "acted in concert to retain and conceal the Jewelry and defame" Mr. Ryan, Dkt. 25 at 19, but the only allegation of Ms. Quinlan-Jaskot's involvement is her purported possession of the Jewelry and purported attempts to discourage Mr. Ryan and his daughter from taking legal action to reclaim

---

[4] That this alleged statement accuses Mr. Ryan of a future crime does not transform Ms. Quinlan's purported statements—which concerned prior acts—into accusations of future crime.

[5] As discussed below, Plaintiff alleges that only Ms. Quinlan made the purported defamatory statements. As such, the Court will dismiss the defamation and IIED claims against Ms. Quinlan-Jaskot. *See infra* Section II(C).

the Jewelry. *See, e.g.*, Dkt. 18 ¶¶ 42, 45, 56, 60–62, 72, 75. The allegations regarding the purported conversion and defamation involve only Ms. Quinlan. *See, e.g., id.* ¶¶ 33–34, 81–83 (allegations that Ms. Quinlan converted the Jewelry); *id.* ¶¶ 48, 52 (allegations that Ms. Quinlan defamed Mr. Ryan). Ms. Quinlan-Jaskot is not even mentioned in the amended complaint under the fraud count, other than to reference that she continued to refuse to return the Jewelry. *Id.* ¶¶ 94–106. That Ms. Quinlan-Jaskot had at least temporary possession of some of the Jewelry does not reasonably plead either a "common design" to commit tortious acts or show that Ms. Quinlan "substantially assisted in the underlying torts." *See Thomas v. Harrington*, 909 F.3d 483, 490–91 (1st Cir. 2018) (describing elements of the two theories to prove a "concerted action" civil conspiracy). The same holds true for the purported attempts to discourage Mr. Ryan and his daughter from taking legal action to reclaim the Jewelry. On the face of the amended complaint, there is no reason to believe that Ms. Quinlan-Jaskot was aware of Ms. Quinlan's allegedly tortious conduct. Accordingly, the Court will dismiss the claim for civil conspiracy.

Finally, Plaintiff's tortious interference claims fail because the amended complaint does not allege that Ms. Ryan's durable power of attorney ("DPOA") had a contractual obligation to bring the present suit. The amended complaint merely alleges that the DPOA was "authorized to bring an action," not that the contract required her to do so. Dkt. 18 ¶ 141. That the Court found it appropriate to appoint Mr. Ryan as Next Friend because it had doubts that Ms. Ryan's DPOA was in fact acting in Ms. Ryan's best interests in declining to bring suit does not mean that it was a breach of contract not to bring the suit. Further, Mr. Ryan has no "advantageous relationship"

with Ms. Ryan's DPOA,[6] as he is not entitled to any benefits from Ms. Ryan's DPOA. *See Bresler v. Muster*, 496 Mass. 111, 116 (2025) (holding that a plaintiff must establish, *inter alia*, "he had an advantageous relationship with a third party"). Accordingly, the Court will dismiss the claim for tortious interference.

## V. Conclusion

For the foregoing reasons, Defendants' motion for to dismiss (Dkt. 22) is GRANTED in part. Counts VI and VII are dismissed, and Ms. Quinlan-Jaskot is dismissed from the case entirely. The motion is otherwise DENIED.

**So Ordered.**

Dated: September 19, 2025

/s/ Brian E. Murphy
Brian E. Murphy
Judge, United States District Court

---

[6] Some courts refer to this claim as "tortious interference with an advantageous business relationship" and require that a plaintiff have "a business relationship or contemplated contract of economic benefit." *Sourcing Unlimited, Inc. v. Elektroteks, LLC*, 2021 WL 2875713, at *15 (D. Mass. July 8, 2021). Under this formulation of the claim, Mr. Ryan's individual claims also fail as no business relationship is alleged.